ON MOTION TO DISMISS OR TRANSFER FOR LACK OF JURISDICTION EN BANC
 

 EVANDER, J.
 

 The University of Central Florida (UCF) has filed a Motion to Dismiss or Transfer for Lack of Jurisdiction an appeal filed by UCF student Paul Couchman. Couchman is seeking review of UCF’s decision to impose certain disciplinary sanctions against him. The underlying issue is whether UCF is an administrative body subject to Florida’s Administrative Procedure Act (APA) when, in purported compliance with rules and regulations adopted by UCF’s Board of Trustees, it takes disciplinary action against a student for alleged improper conduct. If so, Couchman is entitled to seek judicial review in this court pursuant to sections 120.68(1) and (2)(a), Florida Statutes (2011) (“A party who is adversely affected by final agency action is entitled to judicial review.... Judicial review shall be sought in the appellate district where the agency maintains its headquarters or where a party resides or as otherwise provided by law”). If not, then Couchman’s proper remedy is to seek certiorari review in the circuit court.
 
 See Fla. Water Servs. Corp. v. Robinson,
 
 856 So.2d 1035 (Fla. 5th DCA 2003) (party seeking to challenge decision of administrative body, acting in its quasi-judicial capacity, is entitled to present its due pro
 
 *447
 
 cess claim, but only by presenting petition for certiorari review to the circuit court where administrative body is not subject to APA). We conclude that when UCF is acting as a student disciplinary entity pursuant to its duly adopted rules and regulations, it does not come within the definition of an “agency” subject to the APA, and therefore this action must be transferred to circuit court.
 

 The APA applies only to those administrative bodies that come within the Act’s definition of an “agency.”
 
 In re Advisory Opinion of the Governor,
 
 334 So.2d 561, 562 n. 2 (Fla.1976). Section 120.52(1) defines “agency” to mean
 

 the following officers or governmental entities
 
 if acting pursuant to powers other than those derived from the constitution:
 

 (a)... the Board of Governors of the State University System; ...
 
 educational units;
 
 ....
 

 (Emphasis added). “Educational unit” includes a state university “when the university is acting pursuant to statutory authority derived from the Legislature.” § 120.52(6), Fla. Stat. (2011).
 

 Thus, by its express terms, the APA only applies to a state university when the university is acting pursuant to statutory authority from the Legislature.
 
 See also
 
 § 1001.706(2)(b), Fla. Stat. (2011). When a state university is acting pursuant to authority derived from Florida’s Constitution, the APA does not apply.
 
 NAACP, Inc. v. Fla. Bd. of Regents,
 
 876 So.2d 636 (Fla. 1st DCA 2004) (where State University System’s Board of Governors adopts rules pursuant to powers derived from the Constitution, said rules are not subject to challenge under APA).
 

 Prior to November 2002, Florida’s state universities’ governing boards derived their authority from the Legislature.
 
 NAACP,
 
 876 So.2d at 638. However, in November 2002, Florida voters approved an amendment to article IX of the Florida Constitution, providing:
 

 SECTION 7. State University System.—
 

 (a) PURPOSES. In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida’s citizens, their communities and economies,
 
 the people hereby establish a system of governance for the state university system of Florida.
 

 (b) STATE UNIVERSITY SYSTEM.
 
 There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.
 

 (c) LOCAL BOARDS OF TRUSTEES.
 
 Each local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of the state university system. The board of governors shall establish the powers and duties of the boards of trustees.
 
 Each board of trustees shall consist of six citizen members appointed by the governor and five citizen members appointed by the board of governors. The appointed members shall be confirmed by the senate and serve staggered terms of five years as provided by law. The chair of the faculty senate, or the equivalent, and the president of the student body of the university shall also be members.
 

 (d) STATEWIDE BOARD OF GOVERNORS.
 
 The board of governors
 
 shall be a body corporate consisting of seventeen members. The board
 
 shall operate, regulate, control, and be fully responsible for the management of the
 
 
 *448
 

 whole university system.
 
 These responsibilities shall include, but not be limited to, defining the distinctive mission of each fituent university and its articulation with free public schools and community colleges, ensuring the well-planned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs. The board’s management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law. The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system. The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law. The commissioner of education, the chair of the advisory council of faculty senates, or the equivalent, and the president of the Florida student association, or the equivalent, shall also be members of the board.
 

 (Emphasis added).
 

 The Board of Governors created by this amendment came into existence on January 7, 2003.
 

 In accordance with the aforesaid amendment to article IX of the Florida Constitution, the Florida Legislature has attempted to define and distinguish the respective constitutional duties and responsibilities accorded to the Board of Governors and the Legislature. While the Legislature continues to maintain the responsibility to, inter alia, appropriate state funds for the establishment, maintenance and operation of institutions of higher learning,
 
 [1]
 
 it also
 
 *449
 
 recognized that the Board of Governors had the constitutional duty to operate, regulate, control, and be fully responsible for the management of the State University System.
 
 [2]
 
 § 1001.705(2), (3), Fla. Stat. (2011).
 

 As further recognized by the Legislature, the constitutional powers of the Board of Governors (and its designee boards of trustees) include the authority to adopt and enforce a code of conduct for its students. For example, section 1001.706(3)(h) provides:
 

 The Board of Governors, or the board’s designee, may establish a uniform code of conduct and appropriate penalties for violations of its regulations by students and student organizations, including regulations governing student academic honesty. Such penalties, unless otherwise provided by law, may include reasonable fines, the withholding of diplomas or transcripts pending compliance with regulations or payment of fines, and the imposition of probation, suspension, or dismissal.
 

 Pursuant to Florida Board of Governors Regulation 1.001, the Board of Governors delegated broad constitutional authority to the university boards of trustees to administer their respective universities. These broad powers included the power to adopt rules and regulations establishing a uniform student code of conduct and related penalties. Fla. Bd. of Govs. Reg. 1.001(4)(a)(10) (as amended Sept. 16, 2010). Here, Couchman was alleged to have violated UCF’s student code of conduct as established by its Board of Trustees. Because UCF’s power to adopt and enforce a student code of conduct derived from the Florida Constitution and not from the Legislature, its actions are not subject to chal
 
 *450
 
 lenge under the APA. We recede from
 
 Morris v. Florida Agricultural & Mechanical University,
 
 23 So.3d 167 (Fla. 5th DCA 2009), to the extent that decision is inconsistent with this opinion.
 
 [3]
 

 UCF’s motion is granted to the extent that we hereby transfer this cause to the Ninth Judicial Circuit Court, in and for Orange County, Florida.
 

 MOTION GRANTED; CASE TRANSFERRED.
 

 ORFINGER, C.J., GRIFFIN, SAWAYA, PALMER, MONACO, TORPY, LAWSON, COHEN and JACOBUS, JJ., concur.
 

 [1]
 

 .
 

 CONSTITUTIONAL DUTIES OF THE LEGISLATURE-In accordance with s. 3, Art. II of the State Constitution, which establishes the separation of powers of three branches of government; s. 1, Art. Ill of the State Constitution, which vests the legislative power of the state in the Legislature; s. 8, Art. Ill of the State Constitution, which provides the exclusive executive veto power of the Governor and the exclusive veto override power of the Legislature; s. 19, Art. Ill of the State Constitution, which requires the Legislature to enact state planning and budget processes and requirements for budget requests by general law; s. 1, Art. VII of the State Constitution, which requires that the authority to expend state funds be by general law enacted by the Legislature; and s. 1, Art. IX of the State Constitution, which requires the Legislature to make adequate provision by law for the “establishment, maintenance, and operation of institutions of higher learning,” the Legislature has the following responsibilities:
 

 (a)Making provision by law for the establishment, maintenance, and operation of institutions of higher learning and other public education programs that the needs of the people may require.
 

 (b) Appropriating all state funds through the General Appropriations Act or other law.
 

 (c) Establishing tuition and fees.
 

 (d) Establishing policies relating to merit and need-based student financial aid.
 

 (e) Establishing policies relating to expenditure of, accountability for, and management of funds appropriated by the Legislature or revenues authorized by the Legislature. This includes, but is not limited to, policies relating to: budgeting; deposit of funds; investments; accounting; purchasing, procurement, and contracting; insurance; audits; maintenance and construction of facilities; property; bond financing; leasing; and information reporting.
 

 (f) Maintaining the actuarial and fiscal soundness of centrally administered state systems by requiring state universities to continue to participate in programs such as the Florida Retirement System, the state group health insurance programs, and the state casualty insurance program.
 

 (g) Establishing and regulating the use of state powers and protections, including, but not limited to, eminent domain, certified law enforcement, and sovereign immunity.
 

 (h) Establishing policies relating to the health, safety, and welfare of students, em
 
 *449
 
 ployees, and the public while present on the campuses of institutions of higher learning.
 

 § 1001.705(3), Fla. Stat. (2011).
 

 [2]
 

 .
 

 (2) CONSTITUTIONAL DUTIES OF THE BOARD OF GOVERNORS OF THE STATE UNIVERSITY SYSTEM.—
 

 In accordance with s. 7, Art. IX of the State Constitution, the Board of Governors of the State University System has the duty to operate, regulate, control, and be fully responsible for the management of the whole publicly funded State University System and the board, or the board’s designee, has responsibility for:
 

 (a) Defining the distinctive mission of each constituent university.
 

 (b) Defining the articulation of each constituent university in conjunction with the Legislature's authority over the public schools and Florida College System institutions.
 

 (c) Ensuring the well-planned coordination and operation of the State University System.
 

 (d) Avoiding wasteful duplication of facilities or programs within the State University System.
 

 (e) Accounting for expenditure of funds appropriated by the Legislature for the State University System as provided by law.
 

 (f) Submitting a budget request for legislative appropriations for the institutions under the supervision of the board as provided by law.
 

 (g) Adopting strategic plans for the State University System and each constituent university.
 

 (h) Approving, reviewing, and terminating degree programs of the State University System.
 

 (i) Governing admissions to the state universities.
 

 (j) Serving as the public employer to all public employees of state universities for collective bargaining purposes.
 

 (k) Establishing a personnel system for all state university employees; however, the Department of Management Services shall retain authority over state university employees for programs established in ss. 110.123, 110.1232, 110.1234, 110.1238, and 110.161, and in chapters 121, 122, and 238.
 

 Cl) Complying with, and enforcing for institutions under the board’s jurisdiction, all applicable local, state, and federal laws.
 

 § 1001.705(2), Fla. Stat. (2011).
 

 [3]
 

 . In
 
 Morris,
 
 neither party raised nor addressed the issue of whether the amendment to Article IX of the Florida Constitution would limit the application of the APA to state universities.